UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

WILLIAM W. SPARKS,                    )
                                      )
           Plaintiff,                 )
                                      )
v.                                    )        No. 2:21-CV-102-DCP
                                      )
KILOLO KIJAKAZI,[1]                   )
Acting Commissioner of Social Security, )
                                      )
           Defendant.                 )

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal

Rules of Civil Procedure, and the consent of the parties [Doc. 9]. Now before the Court are

Plaintiff's Motion for Judgment on the Pleadings [Doc. 12] and Defendant's Motion for Summary

Judgment [Doc. 19]. William W. Sparks ("Plaintiff") seeks judicial review of the decision of the

Administrative Law Judge ("the ALJ"), the final decision of Defendant Kilolo Kijakazi ("the

Commissioner"). For the reasons that follow, the Court will **GRANT** Plaintiff's motion and

**DENY** the Commissioner's motion.

## I.     PROCEDURAL HISTORY

On May 8, 2019, Plaintiff filed an application for disability insurance benefits pursuant to

Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, claiming a period of disability that

began on September 14, 2018 [Tr. 81, 157–63]. After his application was denied initially and upon

reconsideration, Plaintiff requested a hearing before an ALJ [Tr. 100–03, 107–11, 113–14]. A

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration
("the SSA") on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure,
Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit. *See* 42 U.S.C. § 405(g).

telephonic hearing was held on September 17, 2020 [Tr. 39–66]. On November 2, 2020, the ALJ found that Plaintiff was not disabled prior to July 30, 2020, but became disabled on that date and has continued to be disabled through the date of the decision [Tr. 12–33]. The Appeals Council denied Plaintiff's request for review on May 24, 2021 [Tr. 1–3], making the ALJ's decision the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court on June 25, 2021, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.    ALJ FINDINGS

The ALJ made the following findings:

1.   The claimant meets the insured status requirements of the Social Security Act through March 31, 2024.

2.   The claimant has not engaged in substantial gainful activity since the alleged onset date (20 CFR 404.1571 *et seq.*).

3.   Since the alleged onset date of disability, September 14, 2018, the claimant has had the following severe impairments: bilateral shoulder disorder, status post bilateral surgery; osteoarthritis; carpal tunnel syndrome on the left; peripheral neuropathy; and degenerative disc disease of the cervical spine and lumbar spine (20 CFR 404.1520(c)).

4.   Since September 14, 2018, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

5.   After careful consideration of the entire record, the undersigned finds that since September 14, 2018, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except occasionally lift and carry 20 pounds; frequently

2

lift and carry 10 pounds; stand and/or walk six hours out of eight and sit six hours out of eight; occasionally push and/or pull with the left upper extremity; frequently climb ramps and stairs, but never ladders, ropes or scaffolds; frequently balance, stoop, kneel and crouch, but only occasionally crawl; limited to occasional overhead reaching with the left upper extremity; frequent overhead reaching with the right upper extremity; and frequent handling with the left upper extremity.

6. Since September 14, 2018, the claimant has been unable to perform any past relevant work (20 CFR 404.1565).

7. Prior to the established disability onset date, the claimant was an individual closely approaching advanced age. On July 30, 2020, the claimant's age category changed to an individual of advanced age (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Prior to July 30, 2020, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferrable job skills. Beginning on July 30, 2020, the claimant has not been able to transfer jobs skills to other occupations (See SSR 18-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Prior to July 30, 2020, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).

11. Beginning on July 30, 2020, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant could perform (20 CFR 404.1560(c) and 404.1566).

12. The claimant was not disabled prior to July 30, 2020, but became disabled on that date and has continued to be disabled through the date of this decision. His disability is expected to last twelve months past the onset date (20 CFR 404.1520(g)).

[Tr. 18–33].

## III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).  It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently.  *Crisp v. Sec'y of Health & Hum. Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)).  Additionally, the Supreme Court has explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted).  Rather, substantial evidence "means—and means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197,

4

229 (1938)).

Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted). On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Hum. Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

## IV.    DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

5

> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1520(a)(4), -(e). RFC is the most a claimant can do despite his limitations. § 404.1545(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V.    ANALYSIS

Plaintiff raises two arguments on appeal. First, he argues the ALJ's finding that he could occasionally reach overhead with his left upper extremity is not supported by substantial evidence. Second, he argues the Commissioner failed to carry her burden at step five of the sequential evaluation process to demonstrate that jobs exist in the national economy that Plaintiff could

perform. In response to both arguments, the Commissioner maintains that the ALJ's decision is supported by substantial evidence and should therefore be affirmed. For the reasons discussed below, the Court finds the ALJ failed to adequately explain how he considered the supportability or consistency of the two state agency medical opinions under 20 C.F.R. § 404.1520c in making his ultimate RFC determination that Plaintiff can perform occasional overhead reaching with his left upper extremity. Further, the Court finds this error was not harmless but, rather, requires remand. Finally, because the proper resolution of Plaintiff's limitations on remand may impact the remainder of the ALJ's evaluation—including at step five in the evaluation regarding the ability for Plaintiff to perform work existing in the national economy—the Court declines to address Plaintiff's remaining argument.

### A. The ALJ's RFC Determination

In formulating Plaintiff's RFC, the ALJ found:

[S]ince September 14, 2018, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except occasionally lift and carry 20 pounds; frequently lift and carry 10 pounds; stand and/or walk six hours out of eight and sit six hours out of eight; occasionally push and/or pull with the left upper extremity; frequently climb ramps and stairs, but never ladders, ropes or scaffolds; frequently balance, stoop, kneel and crouch, but only occasionally crawl; limited to occasional overhead reaching with the left upper extremity; frequent overhead reaching with the right upper extremity; and frequent handling with the left upper extremity.

[Tr. 21].

On appeal, Plaintiff challenges that portion of the ALJ's RFC determination in which he found Plaintiff could perform "occasional overhead reaching with the left upper extremity" [Doc. 13 p. 16]. Plaintiff argues this finding is not supported by substantial evidence because "[t]he only

evidence in the record of [him] being able to [reach]² with his left upper extremity is simply the opinions of the two state agency physicians," neither of which "saw or examined the claimant," "had any relationship with [him]," or "had orthopedic credentials" [*Id.*]. Further, "[b]oth orthopedic examiners who actually saw and examined [Plaintiff] found he had significant limitations with his left arm" [*Id.* at 15]. Specifically, "Dr. Kennedy opined no work requiring use of the arms overhead" while "Dr. Wells opined [Plaintiff] could not use the left upper extremity for overhead work" [*Id.*]. Plaintiff argues that both physicians are well qualified and their opinions are supported by the record [*Id.*]. Finally, Plaintiff notes that Dr. Kennedy's and Dr. Wells's opinions are further supported by the findings of Dr. Blaine, a physical therapist Plaintiff saw in April and August of 2019 [*Id.* at 15–16]. Thus, Plaintiff is effectively arguing the ALJ's RFC determination is not supported by substantial evidence because the ALJ gave too much credence to the opinions of the state examining physicians and not enough credence to the opinions of Drs. Kennedy, Wells, and Blaine.

In response, the Commissioner argues the ALJ's decision should be affirmed because the ALJ's determination that Plaintiff could perform occasional overhead reaching with his left upper extremity is supported by substantial evidence in the record. Specifically, the Commissioner first cites to several parts of the record that support the ALJ's finding [Doc. 20 pp. 14–16]. The Commissioner then asserts "[t]he ALJ also properly considered the medical opinions and prior administrative medical findings," including the findings of state agency physician, Dr. Brown, and

---

²      Plaintiff appears to use the words "reach", "lift", and "work" interchangeably throughout his brief when discussing the ALJ's limitation of Plaintiff to only occasional overhead "reaching", "lifting", or "working", with his left upper extremity [Doc 13 pp. 14, 15, 16]. Although the Court questions whether these terms are truly interchangeable in this context, ultimately, the Court finds this distinction irrelevant to the issue before the Court.

the medical opinions of Dr. Wells, Dr. Kennedy, and Dr. Blaine [*Id.* at 16–19]. Finally, the Commissioner argues that "even if some evidence in the record may support Plaintiff's interpretation of the facts, this does not invalidate the ALJ's conclusions" [*Id.* at 20 (citing *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 540 (6th Cir 2014))].

After reviewing the parties' arguments, applicable portions of the record, and relevant case law, the Court finds that the ALJ did not provide a sufficient basis for relying on, or finding persuasive, the findings of state examining physicians Dr. Brown and Dr. Chaudhuri. Because the Court is unable to meaningfully review the ALJ's evaluation of these opinions, this error is not harmless and remand is required. While the Court finds the ALJ's explanation for how he evaluated these opinions insufficient, the Court is not suggesting that a reevaluation will entitle Plaintiff to an award of benefits on remand. The Court finds that remand is necessary simply because it cannot reasonably determine whether the ALJ erred in denying benefits without a clearer explanation as to how the ALJ evaluated and considered the opinions of Drs. Brown and Chaudhuri in formulating Plaintiff's RFC.

1. *The ALJ's Left-Overhead-Reaching Limitation*

As noted above, a claimant's RFC is assessed between steps three and four of the five-step framework. *See* 20 C.F.R. §§ 404.1520(a)(4), (e). A claimant's "impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what [the claimant] can do in a work setting." *Id.* § 404.1545. A claimant's RFC "is the most [the claimant] can still do despite [their] limitations." *Id.* § 404.1545(a)(1). In assessing a claimant's RFC, the ALJ must consider "all of the relevant medical and other evidence," *id.* § 404.1545(a)(3), including "objective medical evidence," "medical opinion," "other medical evidence," "evidence from

9

nonmedical sources," and "prior administrative medical finding[s]." *Id.* § 404.1513(a)(1)–(5).[3] There are specific rules the ALJ must follow in evaluating each category of evidence, *see id.* § 404.1513(a) ("We evaluate evidence we receive according to the rules pertaining to the relevant category of evidence."), including when evaluating medical opinions and prior administrative findings [*See id.* § 404.1520c (regarding claimed filed on or after March 27, 2017); *id.* § 404.1527 (regarding claims filed before March 27, 2017)].

The Court interprets that portion of Plaintiff's brief discussing the various medical opinions and administrative findings the ALJ relied on [Doc. 13 pp. 15–16] as essentially arguing that the ALJ did not follow the proper rules, or procedures, in evaluating the various medical opinions and administrative findings.[4] Specifically, Plaintiff appears to be arguing the ALJ did not follow the proper procedures in evaluating the findings of the two state agency physicians, Dr. Brown and Dr. Chaudhuri. Whether the ALJ followed the proper procedures in evaluating the relevant medical opinions and administrative findings is an issue properly before this Court and, in this instance, the Court finds the ALJ did not properly follow the procedures outlined in 20 C.F.R. § 404.1520c.

---

[3]    Section 404.1545(a)(3) also notes the ALJ must "consider any statements about what [the claimant] can still do that have been provided by medical sources" as well as "descriptions and observations of [the claimant's] limitations from your impairment(s), including limitations that result from your symptoms, such as pain, provided by [the claimant], [their] family, neighbors, friends, or other persons."

[4]    The Court frames Plaintiff's argument in this way because, although Plaintiff does not explicitly cite 20 C.F.R. § 404.1520c, his argument relies on several of the factors enumerated in that section, including Dr. Brown and Dr. Chaudhuri's relationship with Plaintiff, their credentials, and the extent to which they personally examined Plaintiff [Doc. 13 p. 16]. *See* 20 C.F.R. § 404.1520c(c) (listing the medical source's "[r]elationship with the claimant", "[s]pecialization, and "familiarity with the other evidence" as relevant to the inquiry). Furthermore, the Commissioner seems to understand Plaintiff's argument in this way, as they also rely on the factors listed in § 404.1520c [Doc. 20 pp. 16–20].

10

2.      *Section 404.1520c's Articulation Requirements*

Section 404.1520c sets forth requirements as to how the ALJ is to "consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017." Under the old regulations for claims filed prior to March 27, 2017, how much weight was afforded a medical opinion generally depended on the medical source that offered the opinion. *See Underwood v. Soc. Sec. Admin.*, No. 3:16-cv-00546, 2017 WL 128518, at *5 (M.D. Tenn. Jan. 11, 2017) (citing 20 C.F.R. § 404.1527). The three types of acceptable medical sources under the prior regulations included "non-examining sources; examining but non-treating sources; and treating sources." *Id.* (citing 20 C.F.R. §§ 404.1527, 404. 1502) Between these three types of medical sources, "a treating physician's opinion is due 'controlling weight' if that opinion is 'well-supported by medically acceptable clinical and laboratory techniques and is not inconsistent with the other substantial evidence in [the] record.'" *Id.* This was known as the "treating physician" rule. *Id.* "If the opinion [could not] be given controlling weight, the ALJ [was] required to provide 'good reasons' for discounting the weight given to a treating source opinion." *Id.* (citing 20 C.F.R. § 404.1527(c)(2). These reasons must have been "supported by the evidence in the case record, and must [have been] sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (citing Social Security Ruling 96–2p). The rationale for the "good reasons" requirement was that it "ensure[d] that the ALJ applie[d] the treating physician rule and permit[ted] meaningful review of the ALJ's application of the rule" by the reviewing court. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2019).

Under the new regulations that apply in this case, the ALJ will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior

11

administrative finding(s), including those from [claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must "evaluate the persuasiveness of [the] medical opinions and prior administrative medical findings" using five factors, including the (1) supportability and (2) consistency of the opinions or findings, the medical source's (3) relationship with the claimant and (4) specialization, as well as (5) "other factors" such as the "medical source's familiarity with the other evidence in a claim" and their "understanding of [the SSA's] disability program's policies and evidentiary requirements." *Id.* § 404.1520c(a), (c). Of these five factors, "[t]he most important . . . are supportability and consistency." *Id.* § 404.1520c(a), (b)(2). The supportability factors states that, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." *Id.* § 404.1520c(c)(1). The consistency factors states that, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* § 404.1520c(c)(2).

For these two factors, the ALJ is required to "articulate how [they] considered the medical opinions and prior administrative medical findings" and specifically "explain how [they] considered the supportability and consistency factors" in "determin[ing] how persuasive [they] find a medical source's medical opinions or administrative medical findings to be." *Id.* § 404.1520c(a), (b)(2). This "mandatory articulation requirement" has been said to "serve[] the same purposes as the good reasons requirement of the treating physician rule" because "[b]y requiring ALJs to articulate their analysis of the most important factors to consider . . . the requirement permits meaningful judicial review" and "ensures that claimants will receive an explanation of why the ALJ found each medical opinion, including those of their treating

12

physician, to be persuasive, partially persuasive, or not persuasive." *Lorraine R. v. Comm'r of Soc Sec. Admin.*, No. 3:20-cv-00396, 2022 WL 4232839, *4–*5 (S.D. Ohio Sept. 14, 2022) (Gentry, M.J.).

As to what the ALJ must do to meet this articulation requirement, "[t]he Sixth Circuit has not elucidated a specific standard to determine whether an ALJ sufficiently complied with the requirement." *Gavre v. Comm'r of Soc. Sec.*, No. 3:20-CV-00551-DJH-CHL, 2022 WL 1134293, at *4 (W.D. Ky. Jan. 3, 2022) (Linsay, M.J.).  However, "[d]istrict courts applying the new regulations both within this circuit and throughout the country consistently apply the articulation requirement literally," *id.*, in that they require the ALJ to "provide a coherent explanation of [their] reasoning," *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-00588-JDG, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021), "clearly explain [their] consideration of the opinion and identify the evidence supporting [their] conclusions," *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), and otherwise "explain how [they] considered the supportability and consistency factors as to each medical opinion." *Warren I. v. Comm'r of Soc. Sec.*, No. 5:20-CV-495 (ATB), 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021).  As some courts have framed the requirement, the ALJ must "build an accurate and logical bridge between the evidence and [the ALJ's] conclusion." *Todd v. Comm'r of Soc. Sec.*, No. 3:20-cv-1374, 2021 WL 2535580, at *6 (N.D. Ohio June 3, 2021) (quoting *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011)).

Specific instances in which courts have found an ALJ did not meet the articulation requirement include when the ALJ: (1) failed to account for all of the opined limitations in a medical source's opinions—whether in accepting or discounting the limitations, *see Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 907 (E.D. Mich. Aug. 13, 2021) ("For Dr. Trostinkaia,

13

the ALJ gave a terse reason for rejecting the opinion that the plaintiff had to take breaks to lie down during the workday, but there was no mention of the other limitations Dr. Trostinkaia found that were inconsistent with sedentary work."), (2) failed to specify which parts of a medical opinion were consistent or inconsistent with the record, *Israel v. Comm'r of Soc. Sec. Admin.*, No. 2:20-cv-11812, 2021 WL 4130559, at *4 (E.D. Mich. Aug. 13, 2021), or (3) "failed to specifically cite to any examination findings or other evidence in the medical record" in support of their analysis. *King v. Kijakazi*, No. 1:20-CV-196-TAV-HBG, 2021 WL 3520695, at *7 (E.D. Tenn. July 21, 2021), *report and recommendation adopted sub nom*, 2021 WL 3516659 (E.D. Tenn. Aug. 10, 2021); *see also Hardy*, 554 F. Supp. 3d at 907 ("[The ALJ] did not refer to any of these medical findings in the record"). Essentially, courts have found the ALJ failed to meet the articulation requirements when they either failed to specify which portions of the medical source's opinion they agreed or disagreed with or failed to specify which portions of the record supported their conclusion.

As a final note, when citing to the record evidence in support of their conclusion, it is not sufficient that the ALJ previously provided an extensive review of the record evidence before discussing the opinions, *see Hardy*, 554 F. Supp. 3d at 907; *Miles v. Comm'r of Soc. Sec. Admin.*, No. 3:20-cv-410, 2021 WL 4905438, at *5 (S.D. Ohio Oct. 21, 2021), particularly when there is contradictory evidence within the ALJ's recitation. *See Hardy*, 554 F. Supp. 3d at 907. Similarly, it is not sufficient for the Commissioner to point to evidence in the record that would support the decision. *See id.* Rather, the ALJ must explicitly point out which evidence they are relying on to support their finding as to the persuasiveness of the opinion, so that the reviewing court and claimant can follow their logic.

14

3.     *The ALJ's Assessment of Dr. Chaudhuri's and Dr. Brown's Opinions*

In this case, Plaintiff challenges the ALJ's assessment of, and reliance on, the opinions of the two state agency physicians [Doc. 13 p. 16].  In his opinion, the ALJ first provided a narration of each medical opinion and administrative finding in the record, including any limitations the medical source included in the opinion as well as certain evidence the medical source relied on in reaching their opinion [Tr. 22–27].  For Dr. Chaudhuri's and Dr. Brown's opinions, the ALJ stated:

> Dr. Kanika Chaudhuri, a State Agency medical consultant, completed a physical residual functional capacity assessment on August 30, 2019 and opined claimant can perform light exertion that involves frequently climbing ramps, stairs, ladders, ropes and scaffolds; frequently balancing, stooping, kneeling, crouching and crawling; only occasional overhead reaching with the left upper extremity; and only frequent overhead reaching with the right upper extremity (Exhibit 2A).  Dr. Chaudhuri noted that claimant had remote right shoulder surgery in 2015 with recent left shoulder arthroplasty in October 2018 with limited ranges of motion, and some limited ranges of motion in his cervical spine, but otherwise no significant musculoskeletal limitations.  Claimant's diabetes mellitus was noted to be well-controlled.  It was further noted that claimant is able to do all basic chores, drive, shop, and have some socialization. Dr. Sannagai Brown, another State agency medical consultant, completed a second physical residual functional capacity assessment on December 4, 2019 and opined claimant can perform light exertion that involves pushing and/or pulling occasionally with the left upper extremity; never climbing ladders, ropes or scaffolds; frequently climbing ramps and stairs; frequently balancing, stooping, kneeling and crouching; occasionally crawling; only occasional overhead reaching with the left upper extremity; only frequent overhead reaching with the right upper extremity; and only frequent handling with the left upper extremity (Exhibit 5A).

[Tr. 27].  Immediately after this paragraph, the ALJ began assessing the persuasiveness of the various source's medical opinions and prior administrative medical findings [*Id.* at 27–29].  The ALJ began this section by discussing the persuasiveness of the opinions of the two state agency physician's, stating:

> As for medical opinion(s) and prior administrative medical finding(s), we will not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from your medical sources.  As for the opinion evidence, the undersigned

15

finds the opinion of the State Agency medical consultant on reconsideration determination more persuasive than the State Agency medical consultant opinion on initial determination, given the additional evidence upon review (Exhibits 2A & 5A). The opinion of the State Agency medical consultant on reconsideration determination is found to be persuasive as his assessment is well-supported by his rationale, which included all of the evidence available to him at the time of his review, Dr. Brown applied Social Security program knowledge expertise, his opinions is generally consistent with and supported by the longitudinal medical record, and he adequately addressed the limitations resulting from the claimant's impairments, as well as the claimant's reasonable subjective complaints.

[Tr. 27].

The Court finds the ALJ's analysis of Dr. Chaudhuri's and Dr. Brown's opinions is insufficient to meet the articulation requirements set forth in § 404.1520c.

(i)     *Dr. Chaudhuri's Opinion*

Turning to the ALJ's assessment of Dr. Chaudhuri's opinion, the Court begins by noting the ALJ did not even assign a specific level of persuasiveness to Dr. Chaudhuri's opinion. Rather, the ALJ only stated that Dr. Brown's opinion was "more persuasive" than Dr. Chaudhuri's, ultimately finding Dr. Brown's opinion to be "persuasive." This leaves open the question of how persuasive the ALJ found Dr. Chaudhuri's opinion, as the ALJ could have found the opinion to be unpersuasive, minimally persuasive, somewhat persuasive, or almost "equally persuasive" as Dr. Brown's opinion. *See* 20 C.F.R. § 404.1520c(b)(3) ("Equally persuasive medical opinions or prior administrative medical findings about the same issue. When we find that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, we will articulate how we considered the other most persuasive factors"). Without a clear conclusion from the ALJ as to how persuasive he found Dr. Chaudhuri's opinion to be, the Court is unable to ascertain whether the ALJ properly considered the supportability and consistency factors in reaching that

16

conclusion. *See* 20 C.F.R. § 404.1520c(b) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record."); *Lorraine R.*, 2022 WL 4232839, at *5 ("The ALJ was required to articulate how persuasive he found *all* of the medical opinions in the record."); *cf. King,* 2021 WL 3520695, at *8 ("[A]n ALJ is required to consider every medical opinion in the record.").

Even if the ALJ had provided a conclusion as to the persuasiveness of Dr. Chaudhuri's opinion, however, the remaining record is still insufficient to meet § 404.1520c's articulation requirements. Turning first to the analysis section of the ALJ's opinion, the only statement the ALJ makes regarding Dr. Chaudhuri's opinion is, "As for the opinion evidence, the undersigned finds the opinion of the State Agency medical consultant on reconsideration determination more persuasive than [Dr. Chaudhuri opinion], given the additional evidence upon review (Exhibits 2A & 5A)" [Tr. 27]. The ALJ does not, however, specify what additional evidence from the record made Dr. Chaudhuri's opinion less persuasive than Dr. Brown's. A review of Exhibit 5A does not clarify the issue, as the exhibit lists seven additional sources of evidence that were available to Dr. Brown on reconsideration [Tr. 85–86]. Simply stating Dr. Brown had seven additional sources of evidence available to him on review does not provide sufficient specificity as to what evidence the ALJ found relevant in assessing the supportability and consistency of Dr. Brown's opinion. *See King*, 2021 WL 3520695, at *7 (requiring the ALJ to cite to some specific evidence from the record that supports their analysis and allows the Court to review their reasoning).[5] Furthermore, the

---

[5] The other portions of the exhibit also do not clarify the issue. The exhibit instructs the physician to, "Explain manipulative limitations and how and why the evidence supports your conclusions. Cite specific facts upon which your conclusion are based" [Tr. 94]. In response, Dr. Brown simply states, "left overhead reaching: occasionally" [*Id.*]

ALJ failed to specifically address any of the individual limitations contained in Dr. Chaudhuri's opinion, *see Hardy*, 554 F. Supp. 3d 900 at 907 (noting the ALJ failed to make any mention of most of the limitations in the medical source's opinion), or otherwise indicate which specific portions of the medical opinion he agreed or disagreed with.[6] *See Israel*, 2021 WL 4130559, at *4. Thus, the ALJ did not sufficiently specify which portions of Dr. Chaudhuri's opinion he agreed or disagreed with, nor did he sufficiently specify which portions of the record informed his conclusion.

Looking outside the ALJ's analysis section, the only other place the ALJ discussed Dr. Chaudhuri's opinion is in the preceding narrative paragraph when he restated the limitations Dr. Chaudhuri included in his opinion and then pointed out the evidence Dr. Chaudhuri relied on in reaching his conclusion, including that "claimant had remote right shoulder surgery in 2015 with recent left shoulder arthroplasty in October 2018 with limited ranges of motion and some limited ranges of motion in his cervical spine, but otherwise no significant musculoskeletal limitations," Plaintiff's diabetes mellitus was noted to be well-controlled, and "[Plaintiff] is able to do all basic chores, drive, shop, and have some socialization" [Tr. 27]. These statements regarding the evidence Dr. Chaudhuri relied on come closer to meeting the articulation requirements for the supportability factor, in that the ALJ notes what "objective medical evidence" Dr. Chaudhuri used "to support his or her medical opinion(s)." *See* 20 C.F.R. § 404.1520c(c)(1). Where the ALJ's analysis is lacking, however, is in stating whether *he*—as opposed to Dr. Chaudhuri—found this evidence was "relevant" to, or supported, Dr. Chaudhuri's conclusions. This is problematic

---

[6]    Again, absent a conclusion by the ALJ as to how persuasive he found Dr. Chaudhuri's opinion, it is difficult for the Court to even determine whether the ALJ agreed or disagreed with the opinion as a whole, let alone individual limitations within the opinion.

because the ALJ's responsibility in assessing the supportability factor is to determine how "relevant" the evidence the medical source relied on is, not simply to reiterate what evidence the medical source relied on. *See id.* Regardless, even if this narrative paragraph was sufficient to meet the articulation requirements for the supportability factor, this paragraph does not explain whether Dr. Chaudhuri's opinion was "consistent . . . with the evidence from other medical sources and nonmedical sources," *see id.* § 404.1520c(c)(2), let alone which of Dr. Chaudhuri's limitations were consistent, or inconsistent, with the other sources' evidence. In this way, the ALJ did not sufficiently articulate the consistency factor. *See Hardy*, 554 F. Supp. 3d 900 at 907 (noting the ALJ failed to make any mention of most of the limitations in the medical source's opinion); *Israel*, 2021 WL 4130559, at *4 (noting the ALJ failed to identity which parts of the opinion were consistent or inconsistent).

In sum, the Court finds the ALJ did not sufficiently articulate the supportability or consistency factors in evaluating Dr. Chaudhuri's opinion because, first and foremost, he did not even state how persuasive he found the opinion. In addition, within the analysis section of his opinion, the ALJ fails to sufficiently specify which evidence in the record supports, or is consistent with, his conclusion—whatever that conclusion may be—and he failed to specify which limitations within Dr. Chaudhuri's opinion he agreed or disagreed with. Finally, even looking outside the analysis section of the ALJ's opinion to the narrative section, the ALJ did not sufficiently discuss either the supportability or consistency factors, as it is unclear whether the ALJ found the evidence Dr. Chaudhuri relied on to be "relevant" and, regardless, he did not state whether, or how, Dr. Chaudhuri's opinion was consistent with the evidence from other medical and nonmedical sources.

For these reasons, the Court finds the ALJ did not sufficiently articulate either the supportability or consistency factors in evaluating Dr. Chaudhuri's opinion.[7]

(ii)    *Dr. Brown's Opinion*

Turning next to the ALJ's analysis of the persuasiveness of Dr. Brown's opinion, the Court finds the ALJ also did not satisfy § 404.1520c's articulation requirements for this opinion either. While the ALJ did indicate that he found Dr. Brown's opinion "persuasive," he failed to cite to any specific evidence—either in the analysis section or narrative section of his opinion—that supported, or was consistent with, Dr. Brown's opinion.

In the analysis section of his opinion, the ALJ stated, Dr. Brown's opinion was "well-supported by his rationale, which included all of the evidence available to him at the time of his review" [Tr. 27]. The ALJ went on to state, "Dr. Brown applied Social Security program knowledge expertise, his opinion is generally consistent with and supported by the longitudinal medical record, and he adequately addressed the limitations resulting from the claimant's impairments, as well as the claimant's reasonable subjective complaints" [*Id.*] As it relates to the supportability factor, while the ALJ states Dr. Brown "included all of the evidence available to him" and "his opinion[] is generally consistent with and supported by the longitudinal record," he does not specifically cite to any of this evidence. The "fail[ure] to specifically cite to any examination findings or other evidence in the medical record" precludes this Court from being able to adequately review the ALJ's decision and renders the ALJ's explanation of the supportability factor inadequate. *See King*, 2021 WL 3520695, at * 7; *Hardy.* ("[The ALJ] did not refer to any of these medical findings in the record"). Similarly, for the consistency factor the ALJ

---

[7]        The Court notes the Commissioner did not discuss Dr. Chaudhri's opinion in their brief.

states only that Dr. Brown's "opinion[] is generally consistent with . . . the longitudinal record." The ALJ, again, fails to cite what portions of the record are consistent with Dr. Brown's opinion, or what specific limitations within Dr. Brown's opinion are consistent with the record. *See Hardy*, 554 F. Supp. 3d 900 at 907 (noting the ALJ failed to make any mention of most of the limitations in the medical source's opinion); *Israel*, 2021 WL 4130559, at *4 (noting the ALJ failed to identity which parts of the opinion were consistent or inconsistent). Finally, as to the ALJ's narrative section for Dr. Brown's opinion, the ALJ only reiterates the limitations Dr. Brown included in his section. Unlike for Dr. Chaudhuri's opinion, the ALJ does not even cite to any evidence Dr. Brown relied on in his opinion. Thus, the ALJ's narrative section does not provide any additional clarity as to the ALJ's reasoning for finding Dr. Brown's opinion persuasive.

In arguing the ALJ did properly articulate both the consistency and supportability factors, the Commissioner states, "[t]he ALJ considered that Dr. Brown's conclusions were well-supported by his discussion of the evidence, including benign examination findings made by medical providers" [Doc. 20 pp. 16–17 (citing Tr. 94–95)], that he "noted that Dr. Brown's assessments were broadly consistent with the overall medical evidence" [*Id.* at 17 (citing Tr. 290, 416, 536, 550)], and that the ALJ relied on "[a] well-supported prior administrative medical finding that is consistent with the record as a whole" [*Id.*]. The Court notes that while the Commissioner cites to specific portions of the record that could support the ALJ's conclusions, the ALJ made no such citations in his opinion. While the Court appreciates the Commissioner's attempt to rationalize the ALJ's decision for him, "the Commissioner's *post hoc* rationalization of how [the ALJ] could have applied the factors . . . does not cure [the ALJ's] deficiency." *Miles*, 2021 WL 4905438, at *5 ("The regulations do not call for the reviewing court or the Commissioner to comb through the record after the ALJ has rendered her decision and 'imagine manifold ways in which the factors

could have applied to the evidence that was presented.'" (quoting *Hardy*, 2021 WL 3702170, at *6)).  In this case, despite the Commissioner's efforts to justify the ALJ's decision, the ALJ erred by failing to "show [his] work" and articulate why Dr. Brown's opinion was either supported by, or consistent with, the record.

### B.    Harmless Error

Having found that the ALJ did not satisfy the procedural requirements set forth in § 404.1520c by failing to adequately articulate his rational for the supportability or consistency of Dr. Brown and Dr. Chaudhuri's opinions, the remaining question is whether the ALJ's error is harmless or, alternatively, requires remand.   The court in *Lorraine R. v. Commissioner of the Social Security Administration* recently articulated a well-reasoned analysis of the harmless-error framework to use when an ALJ has failed to adequately articulate the supportability or consistency of a medical source's opinion:

> Courts generally will excuse an ALJ's procedural violation as harmless error unless it prejudices the claimant on the merits or deprives him of substantial rights. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2007) (citing *Connor v. U.S. Civil Serv. Comm'n*, 721 F.2d 1054, 1056 (6th Cir. 1983)).  A court's ability to excuse a procedural error depends, however, upon the nature of the regulation and the importance of its procedural safeguard.  *Id.*  For example, an ALJ's failure to comply with the treating physician rule will rarely be excused. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).  Such an error may only be excused as harmless if the medical opinion "is so patently deficient that the Commissioner could not possibly credit it," if the violation is irrelevant because the Commissioner "adopts the opinion ... or makes findings consistent with [it]," or if the goal of the procedural safeguard is otherwise met.  *Id.* at 547.

> The Sixth Circuit has not addressed the circumstances under which an ALJ's failure to explain his consideration of the supportability and consistency factors, as required by 20 C.F.R. § 404.1520c(b)(2), can be excused as harmless error. However, several district courts in the Sixth Circuit have held that the harmless error test articulated in Wilson, which applies to violations of the treating physician rule, should also apply to violations of Section 404.1520c(b)(2).  *See Musolff v. Comm'r of Soc. Sec.*, 2022 U.S. Dist. LEXIS 88910, *39 (N.D. Ohio Apr. 27, 2022) (citing cases).

22

. . . . .

> The mandatory articulation requirement in Section 404.1520c(b)(2) serves the same purposes as the good reasons requirement of the treating physician rule. By requiring ALJs to articulate their analysis of the most important factors to consider when determining the persuasiveness of medical opinions (i.e., supportability and consistency), the requirement permits meaningful judicial review. It also ensures that claimants will receive an explanation of why the ALJ found each medical opinion, including those of their treating physician, to be persuasive, partially persuasive, or not persuasive. In sum, the function and purposes of the mandatory articulation rule in Section 404.1520c(b)(2) are similar to those of the good reasons requirement at issue in *Wilson*. Therefore, the *Wilson* harmless error test should also apply to procedural violations of Section 404.1520c(b)(2).

*Lorraine R.*, 2022 WL 5232839, at \*4. This Court agrees that *Wilson* is instructive. In *Wilson*, the Sixth Circuit provided examples of when an ALJ's failure to meet the procedural requirements for the treating physician rule may have been harmless, including when the ALJ committed "a *de minimis* violation"[8] or when the Commissioner has met the goal and purposes of the regulations, even though she had not complied with the terms of the regulations. *Wilson*, 378 F.3d at 547.

The Court finds that neither situation elucidated in *Wilson* applies to this case. As Plaintiff points out, the only places in the record that include a limitation in which Plaintiff can occasionally reach overhead with his left upper extremity are in Dr. Chaudhuri's and Dr. Brown's opinions [Doc. 13 p. 16]. The ALJ, in turn, relied on this limitation in crafting the hypotheticals he posed to the vocational expert and in ultimately formulating Plaintiff's RFC [Tr. 21, 61]. Thus, the ALJ's failure to adequately articulate the supportability and consistency factors in adopting Dr. Brown's opinion as persuasive and Dr. Chaudhuri's opinion as less persuasive than Dr. Brown's was not a

---

[8] The specific examples the Sixth Circuit cited to include when "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it" and when "the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion." *Wilson*, 378 F.3d at 547.

23

*de minimis* error. Similarly, the ALJ did not meet the goals and purposes of § 404.1520c's articulation requirements despite failing to comply with the requirements. As referenced above, the articulation requirements are meant to allow the reviewing court the opportunity to trace the ALJ's reasoning and assess its validity, as well as to allow the claimant the ability to understand why the ALJ reached the decision they did. Here, those goals have not been met as the ALJ's "evaluation fails to provide an accurate and logical bridge sufficient to allow for meaningful review by the Court" or Plaintiff. *King*, 2021 WL 3520695, at *9. Accordingly, the Court finds the ALJ's failure to properly articulate the supportability and consistency factors for Dr. Brown and Dr. Chaudhuri's opinions, in contradiction of § 404.1520c, is not harmless. Rather, the decision must be remanded so that the ALJ may properly articulate these factors.[9]

As noted above, the Court's finding that the ALJ erred by failing to sufficiently articulate the supportability and consistency factors of Dr. Chaudhuri's and Dr. Brown's opinions means only that the case must be remanded. On remand, the ALJ is free to reach the same conclusion regarding Plaintiff's RFC. However, because "'resolution of this issue on remand may impact the remainder of the sequential evaluation process,' it is not necessary to address Plaintiff's remaining assignment of error." *Id.* at *9 (quoting *Palmore v. Comm'r of Soc. Sec.*, No. 1:20-CV-36, 2021 WL 1169099, at *9 (S.D. Ohio Mar. 29, 2021)). Thus, the Court declines to address Plaintiff's remaining argument regarding the ALJ's finding at Step 5 of the analysis that there are alternative jobs in the national economy that Plaintiff can perform.

---

[9]     To the extent the Commissioner argues throughout her brief that substantial evidence supports the ALJ's decision, even assuming this is true, the presence of substantial evidence does not render the ALJ's error harmless. *See King*, 2021 WL 3520695, at *7 ("[T]his Court cannot engage in meaningful review of the ALJ's decision, even if the ALJ's ultimate conclusion may be supported by substantial evidence." (citations omitted)).

24

## VI.     CONCLUSION

Based on the foregoing, Plaintiff's Motion for Judgment on the Pleadings [**Doc. 12**] will be **GRANTED**, and the Commissioner's Motion for Summary Judgment [**Doc. 19**] will be **DENIED**. The decision of the Commissioner will be **REMANDED** for the ALJ to appropriately consider the medical opinions of record in accordance with this Court's direction.

ORDER ACCORDINGLY.

Debra C. Poplin
United States Magistrate Judge